## NEGLIGENT RUNNING OF AN ELECTRIC CAR.

[Circuit Court of Lucas County.]

TOLEDO, FREMONT & NORWALK RAILWAY CO. v. DAVID GILBERT.

Decided, July 1, 1902.

*Negligence—Electric Car Runs Rapidly Into Darkness—And Strikes a Wagon—Driver of the Wagon Exonerated—Charge of the Court—What the Record Must Show as to Requests for Instructions Before Argument—Instructions Given After Argument.*

1. A refusal of the court to give instructions to the jury before argument does not constitute error, unless it affirmatively appear from the record that the requests for instructions were written requests.
2. Treating such requests as having been made after argument, the action of the court in refusing them can not be complained of where they are substantially covered in the general charge.
3. It is negligence for a motorman to run his car into a place where his view is obscured without having the car under control.
4. Where one driving on a street railway track in the middle of the street looks behind him twice for the approach of a car within a comparatively short distance, and sees no car approaching, and then, while his attention is upon a steam railroad crossing just ahead, a car comes up behind and collides with his wagon, he will not be held to have been guilty of contributory negligence.

HULL, J.; HAYNES, J., and PARKER, J., concur.

Heard on error.

The defendant in error brought this action in the court of common pleas to recover for injuries which he sustained by being struck by a street car on the track of the plaintiff in error (defendant below), claiming that the street car company was negligent in the manner of running a car and in not seeing him on the track, and that his injuries were due to the negligence of the street railway company. He asked damages in the amount of $175, and was awarded by verdict of a jury the full amount of his claim. A motion for a new trial was overruled, and the court rendered judgment against the plaintiff in error, and it is to reverse that judgment that this proceeding in error is brought.

Various errors are complained of by the plaintiff in error, upon the trial of the case. In the admission and exclusion of evidence, in the general charge of the court as given, and the instructions which were given at the request of the plaintiff below, and to the refusal of the court to give the requests of defendant below; and further, it is claimed that the verdict was not sustained by sufficient evidence; is contrary to the weight of the evidence, and that, therefore, the judgment of the court is contrary to law.

The accident occurred on Woodville street in East Toledo, Ohio. Plaintiff was driving on the track at a point near the Wheeling & Lake Erie Railroad Company's tracks. He was riding on a hay rack, and the car struck his wagon and practically demolished it; the horses were thrown to one side of the track and sustained some injury, and Gilbert jumped to the other side and sustained some injury. Gilbert claims that the car was running at a dangerous and negligent rate of speed at the time; that the motorman was negligent in not seeing him and in not stopping or slacking the car before it struck him, so that he might have had time to get off the track.

The railroad company denies all negligence on its part and claims that whatever injuries Gilbert sustained were due to his own negligence. There were some exceptions taken during the trial of the case to the exclusion of evidence offered by the defendant below. The defendant below sought to show by the motorman that when he saw Gilbert on the track he supposed he was going to get off. He was asked this question, page 70:

"Now, when you first saw this man turn on the track, what impression did it make on you—what with reference to what he was going to do or was doing?"

An objection to this question was sustained and exceptions taken and the exclusion of this testimony is one of the errors alleged. In this connection, it may be well to state just about what the surroundings were. At the time of the accident the car was starting on its trip to Fremont, and it came on to Woodville street from East Broadway some 1,500 feet from the Wheeling & Lake Erie railroad track; and about 1,100 feet

from where the car come on to Woodville street from East Broadway, there was an electric light standing in the street. The car had a headlight upon it, and the motorman testified that, on account of the glare of the electric light and the glare of his headlight, he was unable to see beyond the electric light in the direction of the Wheeling & Lake Erie railroad crossing, and that he did not see Gilbert on the track with his hay rack until the car was under the electric light and Gilbert was then 150 to 200 feet off, and he says that as soon as he saw him he rang the gong and Gilbert turned his horses off, but did not get off the track, and the car struck the wagon within a very short space of time thereafter. Now the motorman was asked on page 67 of the record, this question:

"What was the party who had the wagon doing, if anything, at the time?"

And he answered:

."When I first discovered the wagon and started under the light and began to ring the gong hard I noticed the team turn a little to the side, and I supposed that he was going to get out of the way. I kept ringing the gong," etc.

So it will be seen that the witness had already been asked and answered this question, in substance, which was excluded by the court, and which he was not then permitted to answer, and there was no error in the court's refusal to permit the question and answer to be repeated. On page 69 he was asked whether, in his judgment, Gilbert had time to get off the track. Objection to this was sustained and exception taken. We think it very doubtful whether that question was proper; that was a question for the jury—as to whether he had time to get off the track—under all the circumstances as appeared from the evidence. But he had already answered that question. He says, in his answer to a question which had been put to him before that, page 69:

"I will ask you to state as to whether or not from the time you rang the gong and discovered that team and wagon on the track—whether they had time to leave before you got down to where he was? A. Yes, sir; they had plenty of time."

So that there was no error in the court's refusing to permit that to be repeated; it had been asked once and answered, and that was sufficient at all events.

At the conclusion of the evidence there were certain requests to charges made by the plaintiff, and others made by the defendant. The record shows this: "Thereupon, and before the argument, the plaintiff, by his counsel, requested the court to give to the jury before argument, among other requests, the following, to-wit;" and then follow two requests, made by the plaintiff, and which were given. To that exception was taken. Those I will discuss a little farther along. Then this follows in the record: "And the defendant likewise submitted to the court certain requests which it asked to be given to the jury before argument, as follows, to-wit;" and then follow certain requests to charge made by the defendant, some of which were given and some refused, and exception to the refusal was taken in this language: "Thereupon the defendant, by its counsel, excepted to the refusal of the court to give to the jury in charge defendant's request numbered four; and defendant likewise excepted to the refusal of the court to give in charge defendant's request numbered six; and defendant likewise excepted to the refusal of the court to give to the jury in charge defendant's request numbered seven, all as above set forth." Error is claimed here on account of the refusal of the court to give these requests of the defendant below. These requests, it appears by the record, were made before argument, as the language of the record is as I have read: "And the defendant likewise submitted to the court certain requests and which it asked to be given to the jury before argument, as follows, to-wit." They were made under paragraph five of Section 5190, Revised Statutes, which gives to counsel this additional right (which was not had before) to submit instructions in writing before argument, and have them given to the jury before argument. It reads as follows:

"When the evidence is concluded, either party may present written instructions to the court on matters of law, and request the same to be given to the jury, which instructions shall be given or refused by the court before the argument to the jury is commenced."

To constitute error in the action of the court under this pro-
vision, however, the record must show affirmatively that the pro-
visions of the statute were complied with.  As is said by the Su-
preme Court in the case of *Monroeville* v. *Root,* 54 Ohio St., 523:

"Section 5190, Revised Statutes, as amended March 3, 1892
(89 O. L., 60), confers upon parties the right to have such cor-
rect written instructions as may be requested given to the jury
before the argument.

"To constitute error under this provision of the statute, the
record must affirmatively show that the court was requested to
give such instructions before the argument, and that its refusal
to do so was the subject of an exception."

In this case decided by the Supreme Court the record did not
show affirmatively that it was requested that the instructions be
given before argument.  The language of the statute being that
"either party may present written instructions to the court on
matters of law, and request the sme to be given to the jury, which
instructions shall be given or refused by the court before the
argument to the jury is commenced."  The Supreme Court say,
in the opinion, on pages 527, 528:

"But, notwithstanding this provision of the statute, it must
frequently, if not usually, be a matter of indifference to counsel
whether the requested instructions precede or follow the argu-
ment.  And it will still be proper for counsel to present their
requests to the court before argument, even if they are willing
that they should be given after it.  The record submitted to the
circuit court did not show that this was not a case of that char-
acter.  It does show that the propositions were submitted to the
trial judge before the argument, and that there was a request
that they be given to the jury.  But it does not appear that it
was desired that they be given before the argument.  Nor does
the exception show that it was taken to a refusal to give the
instruction before the argument.  It can not be inferred from
this record that the attention of the trial judge was in any way
called to the right conferred by the amended statute.  There
was, therefore, no case for a reversal upon the ground stated by
the circuit court."

And the circuit court was reversed.  This record before us
does not show that these instructions that were requested of the
court were written instructions; it simply shows that the de-

fendant submitted to the court certain requests which they asked to be given to the jury before argument, and shows that the court gave some of the instructions. It does show that the court read those which were given, and if there could be any inference at all it might be inferred that those were committed to writing, or printed, by some one, but by whom it does not appear. And as to those which were refused, the records shows nothing, and for aught that appears in the record, the requests, as is often the case after argument, may have been the oral requests of counsel, and not made in writing. To constitute error in the action of the court in this respect, the record must show affirmatively that the requests for instructions were written requests, which the statute clearly contemplates the court shall have opportunity to examine and deliberate upon, if it desires, before they are given to the jury or refused.

This record does not show that the exceptions were taken, as suggested by the Supreme Court in this case to which I have referred, to the refusal of the court to give the requests before argument. The record states: "Thereupon the defendants by its counsel excepted to the refusal of the court to give to the jury in charge defendant's request number four," etc. But it is sufficient to say that the record does not show, affirmatively, that these were written instructions; that they had been prepared by counsel in writing before they were requested of the court; and if these requests which were refused were covered by the general charge, no error can be predicated upon the action of the court in refusing to give these requests before argument, for in case of requests made after argument, and refused by the court, if they are substantially given in the general charge, the party can not complain, as was held by the Supreme Court in the case of *Schweinfurth* v. *Railway Co.*, 60 Ohio St., 215, where the court say:

"It is error to reverse a judgment for the refusal to give an instruction requested by a party, the substance of which is contained in the charge given, or one that contains an inaccurate statement of the law, or assumes the existence of a material fact in dispute."

So if the substance of the request is given in the general charge, where the request is made after argument, it is not error to refuse the request; in other words, the court is not bound to give the instruction in the exact language requested by counsel, if it is given in substance in the general charge. And on examination of the general charge in this case we think that these requests, so far as they were proper and the defendant below was entitled to have them given, were given by the court in the general charge, and these requests are to be considered the same as though there were not requests asked to be given before argument, but as though they had been requested after argument.

We, therefore, find that the record does not show any error in the action of the court in refusing these requests. It is not necessary to discuss the requests in detail, but we hold that they were substantially covered, insofar as they were proper, by the general charge of the court.

The defendant below excepted to the giving of two instructions that were given at the request of plaintiff below. Request No. 1 was as follows:

"Woodville street in the city of Toledo was originally laid out and established for the use of pedestrians and vehicles; and this use has not been taken away because electric cars have been permitted to run along and over the same. The use of streets for railways is allowed only because it is considered not to be a substantial interference with their free and unobstructed use as highways."

This portion of the instruction is based practically upon the decision of the Supreme Court in the case of *Cincinnati St. Ry. Co.* v. *Snell*, 54 Ohio St., 197, and some of the language contained is perhaps taken from the words of the opinion in that case. No serious objection is made to that part of the request, but the following paragraph is objected to:

"It was, therefore, not negligence on the part of the plaintiff to drive in the center of this street, and along the track of the defendant, but in so doing, plaintiff must have exercised the care that would be exercised by an ordinary prudent man under the same or similar circumstances."

The particular language objected to is this:

"But in so doing, plaintiff must have exercised the care that would be exercised by an ordinarily prudent man," etc.

Defendant's counsel argue that the use of the words "must have exercised the care," was improper and erroneous; that it amounted to charging the jury that the plaintiff below *did* exercise such care when the court stated to the jury that *he must* have exercised such care. It does not seem to us, considering those words in connection with all the court said in this paragraph, that they would bear that construction, but that they meant to the jury simply that the plaintiff should exercise care, or ought to exercise care. If the word *must* is used at all, it is difficult to see how any expression could have been used different from that which the court did use. He could not have said that the plaintiff *must exercise*, for that would have been the present, or the future, and this related to the past. This instruction, "but in so doing plaintiff *must have* exercised the care," etc., we think the jury must have understood to mean simply that it was the duty of the plaintiff to exercise ordinary care, and there was no error in the court giving this instruction as written.

Request No. 2 was given, and it was also expected to. We are of the opinion that this instruction, as a general proposition of law, is too broad and goes too far in laying down the duty of the railroad company to observe and look out for persons upon the track and to slacken its cars when the motormen observe them upon the track; that it goes further than the company should be required to go and imposes more on the railroad company than the law requires. The instruction might be construed to mean that whenever a motorman saw a man on the track, however far he was away, it was his duty to at once get his car under control and slacken its speed so that he might stop it in case the man did not get off the track. This, it seems to us, leaves out the doctrine of ordinary care and the presumption that the motorman might have that the man would get off the track in time to avoid injury, so as a proposition of law, relating to a case where a man had been seen for some distance ahead of

the car on the track, when he might be presumed to get off in time, we think this instruction goes too far; but we are to consider whether it was error to give it under the facts of this case.

The negligence in this case, if there was any negligence, consisted in allowing the car to run at a negligent rate of speed before the car reached the electric light. According to the testimony, there was at this place in the street quite a steep grade and the electric light stood at the brow of the hill in the road. The motorman testifies that he could not see beyond the electric light, on the night in question, on account of its glare and the glare of the headlight, and when he did see the plaintiff that he was within from 150 to 200 feet of him. The testimony shows that this car was running at quite a high rate of speed, just how many miles an hour it was running; of course, can not be exactly determined. Gilbert testifies that it looked to him as though it was going at least forty miles an hour, and almost immediately after he saw it it struck his wagon. The conductor and motorman thought it was not going over eight or ten miles an hour; but it is clear that it was going at a high rate of speed; that it was going so fast that after the motorman discovered Gilbert upon the track, as he himself testifies, he was unable to stop the car before it struck Gilbert's wagon, the car being on the grade, and there being snow on the ground at the time and the track slippery. And the negligence of the company consisted in the motorman's running the car at such a high rate of speed before he reached the electric light and at such a speed down the grade in the street into the darkness, or what to him was darkness, where he could not see any object until he reached the electric light. We are of the opinion that ordinary care required him, running his car upon the hill in the middle of the street as this was, to have his car under such control and to be running it at such a rate of speed that in case he discovered a man on the track in the vicinity of the electric light, he would be able to stop the car. He knew this was a highway and knew it was being used for travel and was in the city of Toledo, and that there was liable to be on the other side of the electric light some one on this track, and it turned out that there was, and he was bound

to run his car with this state of facts in mind, to run it according to the circumstances that existed there. He was not permitted to run his car as though no one had the right to use the track except the railroad company, as laid down by the Supreme Court in *Cincinnati St. Ry. Co.* v. *Snell, supra,* where the question is fully discussed as to the rights of the public and the rights of the railroad company, each being equally bound to exercise ordinary care in keeping a lookout. The railroad company is bound to the exercise of ordinary care in regard to people upon the track, and looking out for cars. The traveler is to exercise ordinary care in getting off the track, and the railroad company has no exclusive right to use that portion of the street upon which its track rests. So it appears to us that, according to the testimony of the motorman himself, he was guilty of negligence in approaching this hill at this rate of speed, when he was unable to see beyond the electric light. He says in his testimony that he did not see the man until he was near the brow of the hill under the electric light, and then he at once rang the gong and had not rung it loudly until then, and that he at once applied the air as hard as he could and put sand on the track. This he says on page 69 of the record. And on page 70 he says the track was slippery and he was not able to stop the car; that the wheels were locked by the brakes and slid.

Now the motorman having been guilty of negligence before he saw Gilbert, in approaching this portion of the track at the high speed he did, we are of the opinion that the giving of this instruction was not prejudicial to the defendant below, and that, therefore, the case should not be reversed on that account. It was, it may be said, the duty of the motorman, as is said in this instruction, under the facts and circumstances of this case, when he discovered this man on his wagon, only 150 feet or a little more away, and his car on this slippery track, going at the rate of speed at which it was going, it was his duty in the exercise of ordinary care, to do all he could to stop the car and prevent the possible sacrifice of human life and the destruction of property, which was imminent when the motorman discovered that Gilbert would not be able to get off the track before the car reached him.

It is argued, strenuously, that the verdict was against the weight of the evidence and not sustained by sufficient evidence. The discussion already had on the instructions has covered that part of the case to some extent. The railroad company were bound to use ordinary care in the running of their cars. The track was in the middle of a public street, of the city of Toledo; the cars were heavy, a car weighing, it was said, some thirty tons; and the company knowing that travelers, in vehicles or on foot, were liable to be upon the track at that time and place, were bound to run their cars with that in view and in such manner as would be ordinary care under all the circumstances and facts, and we are of the opinion that it was negligence for the motorman to approach this grade in the street at the high rate of speed with which he did without having his car under control so that he might slacken its speed or stop it in case he discovered any one on the track beyond the electric light.

It is urged that Mr. Gilbert himself was guilty of contributory negligence. He testified that he looked for cars when he turned onto Woodville street at East Broadway, which was about 1,100 feet from the electric light, and saw none, and that when he reached the brow of the hill, just before he began to descend, he again looked, being then about 1,100 feet from East Broadway. He neither saw nor heard any car, and he then began to descend the hill and was then approaching within a few hundred feet of the Wheeling & Lake Erie railroad, which would require some attention on his part, and after starting down the hill he did not look again until he heard the gong of the street car as it passed under the electric light, and then he looked back and saw the car coming down and turned his horses and endeavored to leave the track, and his horses got off the track and his wagon was turned partly off the track, when he saw that the car was about to strike his wagon and he jumped to the side of the track opposite to where his horses were and saved his life. The car struck the wagon and cut it in two, and the horses were thrown over the embankment, the harness and wagon were destroyed and the horses somewhat injured. The "biding-pole" on the hay rack struck the front end of the car and punched a hole through the end of the car. The car went some fifty feet

beyond the spot where the wagon was struck before it could be stopped.

We think that here was a fair case to submit to a jury as to whether or not Gilbert exercised ordinary care. He had a right to drive on the street car track. The laying of a street car track on a street does not exclude the public from that part of the street. Street cars are permitted in the streets, as the Supreme Court say in *Cincinnati St. Ry. Co.* v. *Snell, supra,* for the reason that they do not interfere materially with the ordinary travel or obstruct it, and if they did, they would not be permitted in the streets. The street car is only another kind of a vehicle from a wagon, for the convenience of travelers, and persons and corporations in propelling them over the street must exercise care in running them the same as one driving a wagon or automobile, and Gilbert had the right to presume that the car, if any was approaching him from the rear, would be run with ordinary care. He was bound to exercise ordinary care in looking out for cars, but he was not bound to that high degree of care that he would have been if he had been riding or driving on a steam railroad track, where he had no right to be. Here he had the same right that the street railroad company had, and was bound the same as it to the exercise of ordinary care; and he having looked twice for cars within a comparatively short space of time on this street, and being at that time approaching a steam railroad track, with that to look out for, and having seen no car approaching from behind and heard none, we think that the jury were fully warranted in finding that he did exercise ordinary care, and that they were justified in finding that the street railroad company was negligent.

Some portions of the general charge are complained of, and especially the language of the court in saying to the jury that the street railroad company were bound to use reasonable care— every reasonable effort, to avoid injury to persons on the tracks. This expression is used two or three times in the charge in connection with other language, however, and the jury was instructed in other places in the charge that the railroad company was bound only to use ordinary care the same as Mr. Gilbert, and we are of the opinion that there was no prejudicial error

in the use by the court of this expression, and that the jury was not misled by it. No special exception was taken to this expression or to any part of the charge by counsel. A general exception only was taken to the charge as a whole, and we think that the charge as a whole stated the law fully and fairly.

On the whole record we are of the opinion that the case was fairly tried—fairly submitted to the jury—and that the verdict was fully sustained by the evidence. We find no error in the record to the prejudice of the plaintiff in error. The judgment of the court of common pleas is, therefore, affirmed.

*Kinney, O'Farrell & Rimelspach,* for plaintiff in error.
*Charles G. Wilson,* for defendant in error.